**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
JOSH APPLEBAUM, On Behalf of Himself and All Other )
Persons Similarly Situated,                         )   **Case No.:**
                                                    )
                                      Plaintiffs,   )
                                                    )   <u>**CLASS ACTION COMPLAINT**</u>
                        -against-                    )   **Plaintiffs Demands Trial by Jury**
                                                    )
                                                    )
LYFT, INC.                                          )
                                                    )
                                      Defendant.    )
-------------------------------------------------------------------------X

Plaintiff, JOSH APPLEBAUM, Individually, and on behalf of the Class of others similarly

situated, by and through his attorneys, respectfully alleges, upon information and belief, separately

and jointly, as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is a proposed class action against defendant Lyft, Inc. ("Lyft") for engaging in

deceptive, fraudulent, and wrongful business practices, in connection with knowingly and

intentionally charging consumers the full prices for tolls as opposed to the discounted E-Z Pass rate

required by vehicles registered with the New York City Taxi and Limousine Commission ("TLC").

2.     Lyft is a privately held transportation company based in San Francisco, CA. Its mobile

application facilitates peer-to-peer ridesharing by connecting passengers who need a ride with drivers

who have a car.

3.     Lyft portrays itself as an innovative 21st Century community-based business,

specifically branding its business model as a "peer to peer transportation platform."

4.     Lyft uses mobile technology to run a traditional for-hire livery service, arranging rides

1

for passengers on non-fixed routes in exchange for compensation.

5.      Lyft presently operates in over 200 U.S. cities, including New York City since 2014.

6.      Lyft's illegal conduct has caused consumers in the New York City metropolitan area to pay substantial premiums for travel on tolled roads, such as tolls at all bridges and tunnels, without notice.

7.      Lyft unfairly and improperly increases Lyft's profits by directly benefiting from each ride consumers take through tolled roads by receiving 20% of the total ride plus additional fees.

8.      On May 30, 2016, Plaintiff took a Lyft between Manhattan in New York City and New Jersey. Plaintiff was charged $15.00 for the Holland Tunnel toll instead of the E-Z Pass discounted rate of $12.50 required by TLC regulations

9.      Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated, whose joinder in this action is impracticable, to seek redress for Lyft's unfair and unlawful practices described herein.

10.     Plaintiff and other members of the Class seek injunctive relief, restitution, damages, penalties and costs against Lyft.

## THE PARTIES

11.     Plaintiff is an individual consumer and resident of the City, County, and State of New York, New York 10010.

12.     Lyft is a Delaware corporation, with its principal place of business at 2300 Harrison Street, San Francisco, CA 94110.

13.     The members of the Class are consumers using the Lyft ridesharing livery service in New York City, New York State, and the tri-state metropolitan New York area, including New Jersey.

2

## JURISDICTION

14.     This Court has jurisdiction over the subject matter of this action by virtue of diversity of citizenship because Plaintiff is a citizen of New York and Defendant is a citizen of California. Additionally, pursuant to the U.S. Class Action Fairness Act of 2005, § 28 U.S.C. Sections 13332(d), 1453 and 1711-1715, this Court has jurisdiction over all class actions where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs."

15.     The U.S. Class Action Fairness Act of 2005, § 28 U.S.C. Sections 13332(d), 1453 and 1711-1715 also applies when the Class compromises of at least 100 plaintiffs. The proposed class herein will be comprised of at least 100 plaintiffs.

16.     Plaintiff and other members of the Class similarly situated invoke this Court's pendant jurisdiction with respect to his claims based on the common law of New York.

17.     Plaintiff and other members of the Class similarly situated invoke the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a).

18.     This Court also has jurisdiction pursuant to Lyft's violation of New York General Business Law § 349; and § 82-26 - § 82-27 of the NYC Taxi and Limousine Commission Rules and Regulations, as well as other violations of NYC TLC regulations.

19.     At all relevant times herein, since 2014, Lyft operated a business providing for-hire livery car service to, among others, Plaintiff and other members of the Class similarly situated, residing in and/or traveling to or from New York State and the New York City metropolitan area in violation of New York General Business Law § 349, as well as § 82-26 - § 82-27 of the NYC Taxi and Limousine Commission Rules and Regulations.

20.     This Court has personal jurisdiction over Defendant Lyft because Lyft regularly conducts business in New York, has sufficient minimum contacts with New York, and otherwise intentionally avail themselves of the laws and markets of New York through the promotion, sale, marketing, and distribution of Lyft products and services in New York. Further, Plaintiff's claims arise out of Defendant's conduct within New York, specifically, Lyft derives substantial revenue from its for-hire livery service and business activity within the State of New York and New York City.

## VENUE

21.     The venue is properly designated as the Southern District of New York in the State of New York based on the substantial business, revenue and operations Lyft has in New York County.

22.     A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## JURY DEMAND

23.     The Plaintiff and other members of the Class demand trial by jury of all issues presented in this action that are triable as of right by a jury pursuant to the applicable statutes and court rules.

## FACTS COMMON TO ALL CAUSES OF ACTION

24.     Lyft provides a transportation service that allows passengers to request and pay for rides from drivers who use their personal vehicles.

25.     Passengers sign up for Lyft by downloading an application on their smartphone, which requires the passenger to provide a mobile phone number and credit card number or a Paypal account.

26.     Once entered into the Lyft system, passengers can "hail" a car using the Lyft application on their smartphone.

27.     The Lyft application notifies the passengers of cars driving in the area.

28.     The application also notifies nearby drivers of the request for a ride, and allows a driver to accept the request.

29.     At pickup, the passenger informs the driver of his destination, and the application calculates a fare based on distance, time, and additional fees such as tolls.

30.     All payments must be made through the application, and Lyft generally receives a total of 20% of the payment by the passenger plus certain fees.

31.     In order to become a Lyft driver, one must use their privately owned car to pick up and drive passengers for a fee.

32.     Lyft requires drivers to pass a TLC inspection and have a For-Hire livery license issued by the New York City TLC.

33.     At the end of each ride, the Lyft application automatically deducts the total calculated amount for the ride from the consumer's credit card or Paypal account.

34.     Lyft benefits greatly from the undisclosed and unauthorized charges by receiving 20% of every fare paid by Lyft passengers plus additional fees.

35.     Lyft has been operating its business in New York City since 2014, and expanded its operations in Brooklyn and Queens on July 11, 2014.

36.     To operate legally in New York City, Lyft for-hire drivers must be licensed by the New York City Taxi and Limousine Commission ("TLC").

37.     At all times relevant, Lyft currently has 11,000 registered drivers in NYC and approximately more than 40,000 rides daily.

38.     Under the New York City TLC regulations, all for-hire vehicles registered with the

5

TLC, such as Lyft, must use E-Z Pass when driving through any toll.

39.    At all relevant times, Lyft drivers in New York City are required to have an E-Z Pass.

40.    The E-Z Pass system is used on toll roads in New York and the New York City metropolitan area.

41.    A car equipped with an E-Z Pass allows the toll to be discounted at a rate less than the cash rate one would pay without an E-Z Pass.

42.    Use of an E-Z Pass device enables passengers in for-hire vehicles to pay substantially discounted toll rates - from 16% to 48% - for tolls charged for roads throughout New York City, New York State and connecting to New Jersey, including bridges and tunnels operating by the NYC MTA.

43.    For example:

1. Bronx-Whitestone, Throgs Neck, & RFK Bridges; Hugh L Carey & Queens Midtown Tunnels
   a. E-Z Pass = $5.54
   b. Cash = $8.00
2. Verrazano-Narrows Bridge (Roundtrip toll collected entering Staten Island only)
   a. E-Z Pass = $11.08
   b. Cash = $16.00
3. Cross Bay and Marine Parkway Bridges
   a. E-Z Pass = $2.08
   b. Cash = $4.00
4. Holland Tunnel
   a. E-Z Pass = $12.50
   b. Cash = $15.00

## LYFT'S WRONGFUL CONDUCT INVOLVING PLAINTIFF

44.    On May 30, 2016, Plaintiff took a Lyft between New York City and New Jersey.

45.    Plaintiff was charged $15.00 for the Holland Tunnel toll instead of the E-Z Pass discounted rate of $12.50 required by TLC regulations.

46.    After receiving the e-mailed invoice for the trip on May 30, 2016, Plaintiff realized

that the Lyft driver, regulated by TLC, had charged the full cash toll price in violation of New York City TLC regulations.

47.     Plaintiff and all members of the Class similarly situated are paying the full cash toll on every toll road regulated by the New York Metropolitan Transportation Authority ("MTA") Bridges and Tunnels, as well as all tolls in the New York City metropolitan area.

## LYFT BENEFITS GREATLY FROM THE UNDISCLOSED AND UNAUTHORIZED CHARGES

48.     Lyft possesses a strong ulterior motive to charge its customers' credit cards and/or PayPal accounts the full cash toll rate because, upon information and belief, it generates millions of dollars in revenue.

49.     Because Lyft's customers are not on notice of non-compliance with TLC regulations, consumers may not at first realize that they were overcharged for a toll. Lyft benefits greatly from the undisclosed and unauthorized charges by receiving 20% of every fare paid by Lyft passengers plus additional fees.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated who, on or after 2014 up until September 9, 2016, paid Lyft the full cash price for tolls incurred during travel in Lyft for-hire cars when TLC regulations required Lyft for-hire drivers to use the discounted E-Z Pass rate.

51.     After every ride, Lyft takes a direct benefit of 20% of the net cost of the ride plus additional fees.

52.     Plaintiff is a member of the Class he seeks to represent.

53.     The members of the Class are so numerous that joinder of all members is impracticable. Class members number in the thousands. The precise number of Class members and their addresses are unknown to Plaintiff but can be obtained from Lyft's records through discovery. Class members can be notified of the pendency of this action by mail, supplemented by published notice if necessary.

54.     The identity of the Class members and their address are within the knowledge of Lyft and can be ascertained through Lyft's records.

55.     Class certification is appropriate because common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely any individual members of the Class, including the following:

a.   Whether Lyft requires its vehicles to be equipped with E-Z Pass devices in accordance with New York City TLC regulations;

b.   Whether Lyft requires its vehicles to use E-Z Pass when driving through tolls;

c.   Whether Lyft's practices was to charge passengers the full cash price for tolls, regardless of whether the drivers used E-Z Pass;

d.   Whether Lyft concealed or failed to disclose material facts to Plaintiff and the Class concerning such billing practices;

e.   Whether Lyft's actions would mislead a reasonable consumer;

f.   Whether Lyft's actions breached the duty of good faith and fair dealing;

g.   Whether Lyft's actions constituted an unfair and deceptive business practice in violation of New York General Business Law § 349;

h.   Whether Lyft's actions violated New York City TLC regulations, as well as

8

provisions § 82-26 - § 82-27;

    i.    Whether Lyft was unjustly enriched at the expense of Plaintiff and the Class;

    j.    Whether Plaintiff and members of the Class are entitled to damages;

    k.    Whether Lyft profited from the unlawful practices described herein.

56.    Plaintiff's claims are typical of the claims of the Class and Plaintiff has the same interests as the other class members.

57.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant on behalf of himself and all other Class members. Plaintiff has selected counsel that is experienced in litigating class actions.

58.    Plaintiff has retained able counsel with extensive experience in breach of contract, consumer fraud, and class action litigation.

59.    The interests of Plaintiff are coincident with, and not antagonistic to, the interest of the other Class members whom Plaintiff seeks to represent.

60.    The individual and ascertainable losses and damages of Plaintiff and each Class members are not sufficiently large to justify the expense and burden of prosecuting individual actions.

61.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Lyft.

62.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation

needed to address Defendant's conduct.

63.     Prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiff will encounter no difficulty in managing this as a class action.

64.     Notice – Plaintiff and his counsel anticipate that notice to the proposed Class will be effectuated through direct notice via both electronic and U.S. mail.

## LYFT'S ARBITRATION CLAUSE

65.     Lyft has an unconscionable, unenforceable sign-in wrap agreement containing an arbitration clause in provision 17 of Lyft's "Terms of Service", which is entitled "Agreement to Arbitrate All Disputes and Legal Claims."

66.     In the arbitration clause, it says the following: "You and We agree that any legal disputes or claims arising out of or related to the Agreement (including but not limited to the use of the Lyft Platform and/or the Services…), that cannot be resolved informally shall be submitted to binding arbitration in the state in which the Agreement was performed… You and we agree that any claim, action or proceeding arising out of or related to the Agreement must be brought in your individual capacity, and not as a plaintiff or class member in any purported class action. You acknowledge and agree that you and Lyft are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding."

67.     Lyft's Terms of Service are accessible only upon clicking an inconspicuous hyperlink at the sign up screen.

68.     An arbitration clause is the 17th paragraph and is in the same small font as the rest of the terms.

10

69.     When Plaintiff and other members of the Class registered for service by Lyft, there was no notice of abrogation of TLC regulations (See <u>Berkson v. Gogo</u> 97 F. Supp. 3d 359 EDNY 2015).

70.     The inconspicuous hyperlink is the same sized font as "I agree with" and is not underlined in a way to delineate that it is in fact a hyperlink. (<u>See Berkson v. Gogo</u>).

71.     A consumer can click "I agree" without ever clicking on the hyperlink.

72.     It is only by first clicking the inconspicuous hyperlink with the Terms of Service – which is not required to register with Lyft and begin hailing Lyft drivers – that a user can even access the Terms of Service

73.     Plaintiff and members of the Class are consumers that did not knowingly and voluntarily waive their right to trial by jury by entering into a contract with an arbitration provision.

74.     When contractual terms as significant as the relinquishment of one's right to a jury trial or even of the right to sue in court are accessible only via a small and distant hyperlink titled "Terms of Service," with text about agreement thereto presented obscurely, there is genuine risk that a fundamental principle of contract formation will be left in the dust: the requirement for a manifestation of mutual assent. (See Berkson v. Gogo).

75.     Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are missing from Lyft's arbitration agreement, and therefore render the agreement unenforceable and unconscionable.

76.     Lyft's arbitration clause has unconscionable, ambiguous and unenforceable language in font smaller than 10, which is in violation of the principles of contract law, New York General Business Law and New York General Obligation Law.

77.     Arbitration agreements, such as Lyft's agreements are no exception to the elements of basic contract law, and mutual assent does not exist because a reasonably prudent consumer cannot be presumed to have notice of all the contents of the terms of service, especially when the consumer is required to click on a separate hyperlink and scroll through pages of small font on their mobile phones.

78.     The right to a trial by jury is a precious and fundamental right that can be waived only if the waiver is *knowing and voluntary*, with the courts indulging every reasonable presumption against the waiver. Meyer v. Travis Kalanick and Uber Technologies, Inc., Case No. 1:15-cv-09796 15 Civ. 9796 by Hon. Jed. S. Rakoff, U.S.D.J. (emphasis added)

79.     Plaintiff and members of the Class "are routinely forced to waive their constitutional right to a jury and their very access to courts, and to submit instead to arbitration, on the theory that they have voluntarily agreed to do so in response to endless, turgid, often impenetrable sets of terms and conditions, to which, by pressing a button, they have indicated their agreement." Meyer v. Travis Kalanick and Uber Technologies, Inc., Case No. 1:15-cv-09796 15 Civ. 9796 by Hon. Jed. S. Rakoff, U.S.D.J.

80.     Plaintiff and members of the Class enroll to use Lyft by simply entering their name, phone number and checking a box agreeing to Lyft's lengthy Terms of Service without even having adequate notice of an arbitration agreement.

81.     To become a Lyft user, one must click a box which says "I agree to Lyft's Terms of Service" to sign in, which includes the arbitration clause stated above.

82.     No reasonably prudent consumer can reasonably be expected to understand and agree to such lengthy, vague terms.

83.     Lyft's electronic arbitration agreement is unconscionable and unenforceable, and does not adequately call to consumers' attention the existence of the Terms of Service, let alone to the fact that, by registering to use Lyft, a user was agreeing to them.

84.     The purveyors of electronic form contracts are legally required to take steps to provide consumers with reasonable notice of contractual terms, and Lyft's arbitration clause fails to do this.

85.     Plaintiff and other members of the Class were not required to assent to Lyft's Terms of Service on any visits or occasions subsequent to the initial sign-up.

## COUNT ONE
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### (On behalf of the Class)

86.     Plaintiff, on behalf of himself and the Class, repeats and realleges paragraphs 1-85 above as though they were fully set forth at length herein.

87.     Lyft enters into agreements with passengers whereby it provides car services via For-hire vehicles at prices specified by the Lyft mobile application and the Plaintiff and members of the Class agree to pay the prices, including tolls incurred in the course of their transportation.

88.     Implied within this agreements are the duties of good faith and fair dealing. As such, each party had a duty of good faith and fair dealing.

89.     Lyft's conduct in charging the Plaintiff and members of the Class the full cash price for tolls in direct violation of New York City TLC regulations constitutes an absence of good faith on part of Lyft.

90.     Lyft thus breached the duty of good faith and fair dealing inherent in agreement with the Plaintiff and members of the Class by intentionally, knowingly, willfully, unreasonably, recklessly, arbitrarily, frivolously, and/or maliciously overcharging Plaintiff and members of the

Class for tolls, and also for other conduct to be disclosed in discovery.

91.     Plaintiff and other members of the Class have performed all, or substantially all, of the obligations imposed on them by agreement with Lyft.

92.     By reason of the foregoing, Plaintiff and other members of the Class have been damaged in an amount to be determined at trial.

## COUNT TWO
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349
### (On behalf of the Class)

93.     Plaintiff, on behalf of himself and the Class, repeats and realleges paragraphs 1-92 above as though they were fully set forth at length herein.

94.     New York General Business Law § 349, among many other things, prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

95.     By furnishing transportation services, Lyft provides a 'service' to Plaintiff and members of the Class within the meaning of New York General Business Law § 349.

96.     Plaintiff and members of the Class are consumers.

97.     Lyft has engaged in deceptive acts and practices in connection with the transportation services it provides to Plaintiff and members of the Class traveling to and from New York City, in violation of New York General Business § 349 including, but not limited to:

        a.  Misrepresenting to the public that tolls charged to Plaintiff and members of the Class were the tolls actually paid by Lyft;

        b.  Inflating the cost and charging tolls that were not incurred or paid by Lyft; and/or

14

    c.   Omitting to inform Plaintiff and members of the Class that Lyft would charge the full cash price for tolls paid, despite TLC regulations requiring Lyft for-hire vehicles to pay discounted E-Z pass rates.

98.    Such actions and failures to act have caused direct, foreseeable, and proximate damages to Plaintiff and other members of the Class.

99.    Plaintiff and other members of the Class will in the future continue to be damaged by Lyft's unlawful acts unless Plaintiff and the putative Class are awarded the relief sought herein.

100.    By reason of the foregoing, Lyft's conduct, as alleged herein, constitutes deceptive acts and practices in violation of New York General Business Law section 349.

101.    Defendant Lyft is liable to Plaintiff and other members of the Class for the actual damages that they have suffered as a result of Lyft's actions.

102.    The amount of such damages is to be determined at trial, but will not be less than $50.00.

## COUNT THREE
## UNJUST ENRICHMENT
### (On behalf of the Class)

103.    Plaintiff, on behalf of himself and the Class, repeats and realleges paragraphs 1-102 above as though they were fully set forth at length herein.

104.    Lyft charged Plaintiff and other members of the Class the full cash price for tolls, retaining the difference between the full cash price and the discounted price Lyft drivers were required to pay via use of the E-Z Pass.

105.    At all relevant times, there are approximately 11,000 Lyft drivers registered with the New York City TLC.

106.    Since 2014, Lyft drivers have been in operation in NYC.

107.    At an estimated 3 tolls per each driver daily, this equates to a total of 33,000 tolls daily.

108.    With the average E-Z pass discount likely around $2.46, this equates to a total of $81,180.00 daily that Plaintiff and members of the Class are paying daily.

109.    Over a period of two years, this amounts to $59,261,400 that Lyft has overcharged Plaintiff and other members of the Class.

110.    Lyft is not entitled to retain the difference between the full cash price and the discounted E-Z pass price.

111.    Lyft is collecting the full cash toll rate at every toll in New York City, New York State and the NYC metropolitan area.

112.    Lyft is collecting tolls that they are not lawfully entitled to under NYC TLC regulations.

113.    For example, in situations involving rides between NYC and New Jersey in the following scenarios: a Lyft driver would pick up a passenger in NYC heading to Newark Airport in New Jersey and charge this passenger a toll to get to Newark Airport, as well as a toll for the Lyft driver to return to NYC. Although TLC regulations allow the Lyft driver to charge for the driver's return trip back to NYC, it does not allow the Lyft driver to pick up a passenger at Newark Airport and charge that new passenger a toll to enter into NYC. This results in "double dipping" for Lyft because they are charging the original passenger a toll to return to NYC, as well as the new passenger the Lyft driver picked up in New Jersey a toll to drive into NYC.

114.    As a result of the conduct alleged above, Lyft wrongfully collected from Plaintiff and other members of the Class amounts of money in excess of that to which Lyft is entitled.

115.     Lyft's retention of the difference between the cash price and the discounted E-Z pass price was improper and has unjustly enriched, benefited, and created a windfall for Lyft, to the detriment and damage of Plaintiff and other members of the Class.

116.     Lyft cannot in equity and good conscience retain the money collected for tolls over and above the discounted price required by TLC for-hire vehicles, which lawfully belongs to Plaintiff and members of the Class pursuant to TLC regulations.

117.     By reason of the foregoing, Plaintiff and other members of the Class have been damaged in an amount to be determined at trial.

## COUNT FOUR
## COMMON LAW FRAUD
### (On behalf of the Class)

118.     Plaintiff, on behalf of himself and the Class, repeats and realleges paragraphs 1-117 above as though they were fully set forth at length herein.

119.     Lyft made a representation of fact to Plaintiff and members of the Class that its for-hire drivers would follow the New York City TLC regulations governing the use of E-Z pass when Lyft required its drivers to obtain TLC licenses.

120.     Upon requiring its drivers to have TLC licenses, Lyft drivers are supposed to follow the rules and regulations of TLC, especially pertaining to the use of E-Z pass when driving through tolls.

121.     This representation was false because Lyft drivers were charging Plaintiff and members of the Class the full cash toll rate when driving through any toll road.

122.     This representation was a material issue because Plaintiff and members of the Class would not have agreed to pay the full toll rate when reasonably prudent consumers are aware that

the use of E-Z pass allows for a discounted rate.

123.    The representation made by Lyft was intentionally in violation of the TLC regulations with the intent to defraud Plaintiff and members of the Class.

124.    Plaintiff and members of the Class detrimentally relied on this representation since the Plaintiff and members of the Class were charged the full cash toll rate as opposed to the discounted rate.

125.    As a result of the conduct alleged above, Lyft wrongfully collected from Plaintiff and other members of the Class amounts of money in excess of that to which Lyft is entitled.

## COUNT FIVE
## VIOLATION OF § 82-26 - § 82-27 OF THE NYC TLC REGULATIONS, AMONG OTHER PROVISIONS
### (On behalf of the Class)

126.    Plaintiff, on behalf of himself and the Class, repeats and realleges paragraphs 1-125 above as though they were fully set forth at length herein.

127.    New York City TLC regulations provides that all street hail liveries with TLC licensees, such as drivers with Lyft, must be equipped with a New York MTA Bridges & Tunnels E-Z Pass and pass along the E-Z pass benefit to Plaintiff and members of the Class when driving through any toll.

128.    By furnishing transportation for-hire livery service and requiring ALL of its 11,000 drivers (and more) to have TLC licenses, Lyft provides a street hail livery service to Plaintiff and members of the Class within the meaning of New York City TLC regulations.

129.    Lyft is required to have all of its drivers pass along the discounted E-Z pass toll rate to the Plaintiff and members of the Class when driving through tolls.

130.    Lyft has engaged in direct violation of these New York City TLC provisions by charging Plaintiff and other members of the Class the full cash toll rate.

131.    At all relevant times, there are approximately 11,000 Lyft drivers registered with the New York City TLC.

132.    Special damages equate to approximately $59,261,400 that Lyft has overcharged Plaintiff and members of the Class.

133.    Lyft is collecting full tolls on every toll road in New York State, New York City, and the NYC metropolitan area, including "double dipping" as alleged in paragraph 97.

134.    Such actions and failures to act have caused direct, foreseeable, and proximate damages to Plaintiff and other members of the Class.

135.    Plaintiff and other members of the Class will in the future continue to be damaged by Lyft's unlawful acts unless Plaintiff and the putative Class are awarded the relief sought herein.

136.    By reason of the foregoing, Plaintiff and other members of the Class have been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein.

## COUNT SIX
## VIOLATION OF CONSUMER PROTECTION ACTS
### (On behalf of the Class)

137.    Plaintiff, on behalf of himself and the Class, repeats and realleges paragraphs 1-136 above as though they were fully set forth at length herein.

138.    Plaintiff brings his statutory fraud claims pursuant to the Consumer Fraud Acts in New York, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

19

139.    Plaintiff and other members of the Class are consumers within the meaning of the Acts and Defendant's practices were addressed to the New York metropolitan market and implicate consumer protection concerns.

140.    At all relevant times, Defendant conducted trade and commerce within the meaning of these Acts.

141.    Lyft has engaged in deceptive acts and practices in connection with the transportation services it provides to Plaintiff and members of the Class traveling to and from New York City, in violation of these Acts by: misrepresenting to the public that tolls charged to Plaintiff and members of the Class were the tolls actually paid by Lyft; Inflating the cost and charging tolls that were not incurred or paid by Lyft; and/or Omitting to inform Plaintiff and members of the Class that Lyft would charge the full cash price for tolls paid, despite TLC regulations requiring Lyft for-hire vehicles to pay discounted E-Z pass rates.

142.    Such actions and failures to act have caused direct, foreseeable, and proximate damages to Plaintiff and other members of the Class.

143.    Plaintiff and other members of the Class will in the future continue to be damaged by Lyft's unlawful acts unless Plaintiff and the putative Class are awarded the relief sought herein.

144.    By reason of the foregoing, Lyft's conduct, as alleged herein, constitutes deceptive acts and practices.

145.    Defendant Lyft is liable to Plaintiff and other members of the Class for the actual damages that they have suffered as a result of Lyft's actions.

146.    The amount of such damages is to be determined at trial, but will not be less than $50.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own and on behalf of all others similarly situated members of the Class, requests that this Court grant the following relief:

    a.  Certifying this action as a class action on behalf of the proposed Class and Plaintiff as representative of the Class and appointing the undersigned as counsel for the Class pursuant to rule 23 of the Federal Rules of Civil Procedure;

    b.  Awarding Plaintiff and other members of the Class: (1) reimbursement of all excess tolls charged in the breached of the duty of good faith and fair dealing, in amounts to be proven at trial; (2) disgorgement of all profits made as a result of the deceptive and fraudulent practices alleged herein in violation of the General Business Law § 349; (3) an injunction enjoining and restraining Lyft from further charging or collecting for tolls at a rate greater than the E-Z Pass rate; (4) pre and post judgment interest; (5) attorney's fees; (6) costs of litigation and disbursements of this action; and (7) treble damages, including compensatory damages, punitive damages and special damages of approximately $60,000,000.

    c.  For such other and further relief that this Court deems just and proper.

Dated:  New York, New York
         September 9, 2016

                    Yours, etc.,

                    By: Nealraj Bhushan, Esq. .
                    Attorney for Plaintiff and the Class
                    500 Fifth Avenue 45th Floor
                    New York, New York 10110
                    (212) 869-3500

By: Allyson L. Stein, Esq.
THE JACOB D. FUCHSBERG LAW FIRM, LLP.
Attorney for Plaintiff and the Class
500 Fifth Avenue 45th Floor
New York, New York 10110
(212) 869-3500

By: Eli Fuchsberg, Esq.
THE JACOB D. FUCHSBERG LAW FIRM, LLP.
Attorney for Plaintiff and the Class
500 Fifth Avenue 45th Floor
New York, New York 10110
(212) 869-3500

By: Kevin Caldwell, Esq.
*Of Counsel* – Attorney for Plaintiff and the Class
3 Washington Square, Apt. 2D
Larchmont, New York 10538
(914) 548-2140